### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY, as subrogee of its insureds, Chris Kernion and Jill Kernion,** | |
| **Plaintiff,** | |
| **v.** | **1:15-cv-517-WSD** |
| **ADT, LLC, formerly known as BRINKS HOME SECURITY, INC., and/or BROADVIEW HOME SECURITY, INC.,** | |
| **Defendant.** | |

### OPINION AND ORDER

This matter is before the Court on Defendant ADT, LLC's[1] ("Defendant")

Motion to Dismiss for Failure to State a Claim [2] ("Motion").

## I.     BACKGROUND

On February 20, 2015, Defendant removed the complaint filed by Plaintiff

Allstate Insurance Company ("Plaintiff), as subrogee of its insureds Chris Kernion

and Jill Kernion (the "Kernions"), against Defendant in the State Court of Cobb

County, Georgia.  (Notice of Removal [1]).

---

[1]     Defendant was formally known as Brinks Home Security, Inc. and
Broadview Home Security, Inc.

Plaintiff's Complaint [1.1] alleges that Plaintiff insured the Kernions' property located at 4620 Traywick Drive, Marietta, Georgia (the "Property"). (Compl. ¶ 7).  On March 18, 2009, the Kernions entered into a Protective Service Agreement ("Contract")[2] with Defendant for the installation and maintenance of protective equipment, including a water sensor, also known as a "water bug."  (Id. ¶ 9).  On January 8, 2014, while the Kernions were out of town, the pipes burst and, because Defendant failed to properly install or maintain the protective equipment, the water sensors did not activate and the Kernions were not notified of the water breach.  (Id. ¶ 10).  The Property suffered extensive water damage when the pipes burst, sending thousands of gallons of water throughout the Property. (Id. ¶ 8).  The Kernions filed a claim with Plaintiff for property damage, and after the Kernions paid a deductible of $3,000, Plaintiff paid a total amount of $100,190.27 to settle the damage claims arising from the January 8, 2014, incident. (Id. ¶¶ 11-12).  Plaintiff seeks to recover $113,190.27 from Defendant based on the

---

[2]      Defendant submitted with its Motion to Dismiss a copy of the Contract.  The Court may consider the Contract without converting Defendant's motion to one for summary judgment because the Contract is central to Plaintiff's claims and Plaintiff does not challenge its authenticity or object to the Court's consideration of it.  (Pl.'s Res. [4] at 2).  See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed; "undisputed" in this context means that the authenticity of the document is not challenged).

damages caused by Defendant's failure to properly install or maintain the water bug.  (Id. ¶¶ 13-15).

On February 27, 2015, Defendant filed its Motion to Dismiss.  Defendant notes that Plaintiff does not specify what legal causes of action it asserts against Defendant.  (Mot. at 1).  Defendant argues that Plaintiff's presumed breach of contract and negligence claims are not viable because (1) the Kernions contractually agreed to look exclusively to their insurance carrier in the event of a loss and waived the insurer's right of subrogation against Defendant; (2) the Contract exempts Defendant from liability and limits Plaintiff's recoverable damages; (3) Plaintiff fails to state a claim for breach of contract because it does not identify a specific provision of the contract that Defendant allegedly breached; and (4) Plaintiff cannot state a claim for negligence because Defendant did not have a common-law duty to perform obligations arising solely by contract, namely, installing and maintaining a water sensor.  (Id. at 2).

## II.    DISCUSSION

### A.    Legal Standard on a Motion to Dismiss

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the

cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,
992 F.2d 1171, 1174 (11th Cir. 1993).

In considering a motion to dismiss, the Court accepts the plaintiff's
allegations as true and considers the allegations in the complaint in the light most
favorable to the plaintiff. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);
Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also
Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the
motion to dismiss stage, all well-pleaded facts are accepted as true, and the
reasonable inferences therefrom are construed in the light most favorable to the
plaintiff."). The Court, however, is not required to accept a plaintiff's legal
conclusions. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260
(11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court
also will not "accept as true a legal conclusion couched as a factual allegation."
See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Ultimately, the
complaint is required to contain "enough facts to state a claim to relief that is
plausible on its face." Twombly, 550 U.S. at 570.

To state a plausible claim for relief, the plaintiff must plead factual content
that "allows the Court to draw the reasonable inference that the defendant is liable
for the misconduct alleged." Iqbal, 556 U.S. at 678. "Plausibility" requires more

4

than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (citing Twombly, 550 U.S. at 557).  "A complaint is insufficient if it 'tenders naked assertions devoid of further factual enhancement.'"  Tropic Ocean Airways, Inc. v. Floyd, 598 F. App'x 608, 609 (11th Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004); see also White v. Bank of America, NA, 697 F. App'x 1015, 1018 (11th Cir. 2014) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)).[3]

---

[3]     Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555.

B.     Analysis

    1.     Exculpatory Clauses

Under Georgia law, the "cardinal rule of contract construction is to ascertain the intention of the parties." Lay Bros v. Golden Pantry Food, 616 S.E.2d 160, 163 (Ga. Ct. App. 2005) (citations omitted); see also Johnson v. U.S. Fidelity & Guaranty Co., 91 S.E.2d 779, 782 (Ga. Ct. App. 1956). A contract must be considered as a whole document. Lay Bros., 616 S.E.2d at 163 ("the whole instrument . . . must be considered"). Courts should "avoid any construction that renders portions of the contract meaningless." RLI Ins. v. Highlands of Ponce, L.L.C., 635 S.E.2d 168, 172 (Ga. Ct. App. 2006).

Contract interpretation under Georgia law is a stepped process:

(1) Is the language clear and unambiguous? If it is, the court simply enforces the contract according to its terms. If it is ambiguous, (2) the court must apply the rules of contract construction to resolve the ambiguity. If the ambiguity cannot be resolved, (3) the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

Harris v. Distinctive Builders, Inc., 549 S.E.2d 496, 498-99 (Ga. Ct. App. 2001); see also Hall v. Ross, 616 S.E.2d 145, 147 (Ga. Ct. App. 2005).

Here, Defendant argues that, under the terms of the Contract, the Kernions waived their right to subrogation, exempted Defendant from liability, and limited their recovery, if any, to $359.40, the amount of fees the Kernions paid to

Defendant during the twelve-month period before the accident.  (See Mot. at 8-13).

Defendant's arguments are centered on two clauses in Paragraph 7 of the Contract

(the "Exculpatory Clauses"),[4] which provide:

> . . . YOU AGREE THAT BRINK'S SHALL NOT BE LIABLE FOR
> LOSS OR DAMAGE DUE DIRECTLY OR INDIRECTLY TO ANY
> OCCURRENCE OR CONSEQUENCES THEREFORM, WHICH
> THE SERVICE IS DESIGNED TO DETECT OR AVERT. . . .
>
> . . .
>
> . . . YOU WILL MAINTAIN YOUR OWN INSURANCE
> COVERAGE AS YOU DESIRE TO PROTECT YOU AND
> OTHERS FROM ANY LOSSES EXCEEDING THESE LIMITS.
> YOU WILL ENSURE THAT EACH SUCH POLICY CONTAINS A
> PROVISION OR ENDORSEMENT WAIVING ANY AND ALL
> SUBROGATION RIGHTS AGAINST BRINK'S AND ITS
> EMPLOYEES, CONTRACTORS AND VENDORS.  YOU WILL
> LOOK SOLELY TO THE PROCEEDS OF SUCH INSURANCE
> FOR ANY LOSS, LIABILITY, DAMAGE OR CLAIM ABOVE
> THE LIMITS OF BRINK'S LIABILITY TO WHICH YOU AGREE
> IN THIS SECTION 7.

(Contract at Section 7(b), (e)).  Plaintiff argues that the Exculpatory Clauses should

not be enforced because they are not explicit and they "lack the requisite indicia of

prominence."  (Resp. at 7).  Because the appearance of the Exculpatory Clauses as

---

[4]    Although the first is better characterized an exculpatory clause and the
second a limitation-of-liability clause, the Parties do not argue that a different
standard of review applies and Georgia law does not appear to treat the clauses
differently.  See Monitronics Int'l, Inc. v. Veasley, 746 S.E.2d 793, 802 n.20
(Ga. Ct. App. 2013).

printed in the Contract are important to the Court's consideration of Defendant's Motion to Dismiss, the Contract is attached as an exhibit to this Order.

In Georgia, exculpatory or limitation-of-liability clauses can be valid and binding and "are not void as against public policy unless they purport to relieve liability for acts of gross negligence or willful or wonton conduct." See Monitronics Int'l, Inc. v. Veasley, 746 S.E.2d 793, 802 (Ga. Ct. App. 2013). However, "[b]ecause exculpatory clauses waive substantial rights, could amount to an accord and satisfaction of future claims and require a meeting of the minds on the subject matter, they must be 'explicit, prominent, clear and unambiguous.'" JVC Am., Inc. v. Guardsmark, L.L.C., 2006 WL 2443735, at *4 (N.D. Ga. Aug. 22, 2006) (quoting Parkside Ctr., Ltd. v. Chicagoland Vending, Inc., 552 S.E.2d 557, 562 (Ga. Ct .App. 2001) & Dep't of Transp. v. Arapaho Constr., 349 S.E.2d 196 (Ga. Ct. App. 1986)).

In JVC, the exculpatory clause appeared on the reverse side of a two-page contract printed on a single piece of paper.  JVC, 2006 WL 2443735, at *4.  The reverse page was entitled, "Standard Terms and Conditions," and contained twenty-six paragraphs, in two columns, and was printed in "extremely small print" and single spaced.  Id. at 5.  The JVC court observed that "[t]here is no bold typeface which might distinguish some terms and conditions from others."  Id.

8

The exculpatory clause was contained within paragraph 8, which consisted of six separate subclauses, and was not separately set off.  Id.  The Court concluded that "none of the language on the reverse side . . . including the exculpatory clause, is prominent, explicit, or clear."  Id.

In Parkside, the exculpatory clause was located on the last page of a form lease, under the heading "Miscellaneous," in a subparagraph without a separate heading and printed in typeface as small as the surrounding paragraphs.  Parkside, 552 S.E.2d at 562.  The exculpatory clause itself was not set off in a separate paragraph, "but appear[ed] only as the second clause of a sentence."  Id.  The Georgia Court of Appeals found that the paragraph "lack[ed] any indicia of prominence" and was unenforceable.  Id.

In Monitronics, the exculpatory clause at issue limited the liability of the defendant, an alarm monitoring company, to $250, including for negligent acts. Monitronics, 746 S.E.2d at 801.  The exculpatory clause was printed on the reverse side of a single-page contract, in subsection (e) of paragraph five, which was titled, "DAMAGES."  Id.  The $250 limitation was not set off in its own paragraph or subparagraph.  Instead, it was toward the end of the second, long sentence in subsection (e), after another long sentence discussing the liability of police or fire departments, and "far removed from the paragraph 5 title that indicates the subject

matter of the paragraph." Id. at 802.  The court in Monitronics observed: "while the sentence indicating that Monitronics is not liable for incidental or consequential damages is in capitalized typeface, neither the $250 limitation nor the fact that it applies to acts of negligence is capitalized or set off in any unique or prominent way.  To the contrary, this important language is written in the same small, singled-spaced typeface as the majority of the contract." Id. at 802-803.  In rejecting the argument that a "capitalized reference to 'incidental or consequential damages' alone renders the [exculpatory] clause sufficiently prominent," the court stated that, "while this particular part of the limitation of liability clause may be prominent, the rest of the long subsection (e), including the $250 limitation of liability and the reference to its own negligence upon which Monitronics actually relies, is not." Id. at 803.  The court found that the exculpatory clause was unenforceable, and affirmed the trial court's denial of the defendant's motion for summary judgment and its motions for judgment notwithstanding the verdict and other post-trial relief.  Id. at 802-803.[5]

---

[5]     In denying the defendant's motions, the trial court in Monitronics held that the exculpatory clause was unconscionable and void as against public policy. Monitronics, 746 S.E.2d at 802.  On appeal, the Georgia Court of Appeals affirmed the denial of summary judgment on the basis that the exculpatory clause was unenforceable because it was not "explicit" and "lack[ed] the requisite indicia of prominence."  Id. at 802-803 & n.17 (citing Caswell v. Anderson, 527 S.E.2d 582

Here, the Contract is a two-page document, the provisions of which are printed on both sides of a single page. (Pl.'s Resp. [4] at 6-7). Paragraph 7 is located on the reverse page, which contains eight sections and 23 subparagraphs, formatted in two columns. The information on the reverse side is printed in extremely small print and is single spaced. That the Exculpatory Clauses are written in all capital letters does not support that they are sufficiently prominent as a matter of law, including because most of the information before, and after, the Exculpatory Clauses are also written in all capitals. That more than half of Sections 5(f), 7(b), and 7(e), and all of Sections 6(a), 6(f), 7(a), and 7(c), are capitalized discredits Defendant's assertion that the Exculpatory Clauses are sufficiently prominent because they are "in all capital letters to set it off from the surrounding text." (See Reply [5] at 5-6). While the language on which Defendant relies is capitalized, so too is much of the Contract.

Defendant also argues that the limitation of liability section, which contains the Exculpatory Clauses, is prominent because it is set off in its own section, under its own heading. Although the heading, "Section 7. LIMITATION OF LIABILITY" is bold and set off from the rest of the Contract, Section 7 contains five separate subparagraphs, none of which contain a subheading, and the

(Ga. Ct. App. 2000) (affirming trial court's grant of summary judgment as right for any reason given that trial court's ultimate construction of contract was correct)).

11

Exculpatory embedded themselves are not set off separately.  Rather, the Exculpatory Clauses are located in the middle of subparagraphs (b) and (e)—the last half of the penultimate sentences in those subparagraphs.[6]  While the heading may be prominent, the important limiting language of the Exculpatory Clauses are far removed from that heading and are written in the same single-spaced, small typeface as the majority of the Contract.  See Monitronics, 746 S.E.2d at 802; Parkside, 552 S.E.2d at 562; compare Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc., 490 S.E.2d 124 (Ga. Ct. App. 1997) (exculpatory clause enforceable where it was set off in its own paragraph, with a separate capitalized heading and with all key language capitalized); Grace v. Golden, 425 S.E.2d 363 (Ga. Ct. App. 1992) (exculpatory clause was enforceable where typeface of clause was "larger and bolder than that in the preprinted portions of the deed" and party's attorney signed next to it).

Finally, Defendant argues that two sections on the front page of the Contract that refer to the limitation of liability section support that the Exculpatory Clauses are prominent.  At the top, in a box labeled "Introduction," the Contract states:

---

[6]    The Court also notes that, because Section 7 begins toward the bottom of the first column, subparagraphs (a)-(d) appear under the bold "Limitation of Liability" heading, while subparagraph (e), which contains the second of the Exculpatory Clauses, is located entirely in the second column, at the top of the page.

> By signing this Agreement, you agree to be bound by all of its
> provisions, just as Brink's does.  Brink's calls your special attention to
> Sections: 3 – Agreement for a THREE YEAR TERM AND
> RENEWAL TERMS; 5(a) – Brink's OWNERSHIP OF THE
> PROTECTIVE EQUIPMENT; 5(h) – COMMUNICATION OF
> SIGNALS; and 7 – LIMITATION OF LIABILITY.

(Contract at 1).  Toward the bottom of the page, directly above the signature line,

the Contract states:

> THIS AGREEMENT CONSISTS OF SECTIONS 1 THROUGH 13
> APPEARING ON THE FRONT AND REVERSE SIDE.  YOU
> ACKNOWLEDGE THAT PRIOR TO SIGNING THIS
> AGREEMENT YOU RECEIVED, READ AND UNDERSTOOD A
> LEGIBLE, EXACT AND COMPLETELY FILLED-IN COPY OF
> THIS AGREEMENT [INCLUDING THE DOCUMENTS LISTED
> IN SECTION 12(a)] AND THAT UPON SIGNING SUCH COPY
> WAS ALSO SIGNED BY BRINK'S.  YOU FURTHER
> ACKNOWLEDGE THAT YOU UNDERSTAND AND ACCEPT
> SECTION 7 WHICH LIMITS BRINK'S LIABILITY AND THAT
> YOU MAY INCREASE BRINK'S LIMITATION OF LIABILITY
> BY PAYING AN ADDITIONAL CHARGE TO BRINK'S.

(Id.).  Although this language appears to be bolded and in a font larger than the

Contract terms, the rest of the Contract, including Section 7 and the Exculpatory

Clauses, is written in significantly smaller font and is not bolded.  That

"Section 7-Limitation of Liability," is included in a list of headings of the four, of

the Contract's thirteen, sections that Defendant "calls your special attention to,"

and that the Contract prominently states that it contains a section that "limits

Defendant's liability," does not necessarily support that the Exculpatory Clauses

themselves, particularly the terms on which Defendants specifically rely, are "explicit, prominent, clear and unambiguous." See Monitronics, 746 S.E.2d at 802-803; JVC, 2006 WL 2443735, at *5 ("The court does not find it relevant that the parties made one alteration to reverse side terms in [another] paragraph [ ] and initialed those changes. . . . The fact that the parties may have considered one portion of the reverse side material speaks nothing about whether the exculpatory clause is sufficiently prominent."); cf. Leland Indus., Inc. v. Suntek Indus., Inc., 362 S.E.2d 441 (Ga. Ct. App. 1987) (disclaimer was not conspicuous, as required by O.C.G.A. § 11-2-316(2), the provision of Georgia's Commercial Code which governs exclusion or modification of warranties, where only the introductory language was capitalized and the actual disclaimer language was in exactly the same size and color type as the remainder of the contract).[7]

The Court concludes, under the circumstances here, that the Exculpatory Clauses are not, as a matter of law, "prominent, explicit, clear, and unambiguous" so as to bar Plaintiff from asserting its claims in this action.  That is, Defendant's argument based on the Exculpatory Clauses does not provide a basis to dismiss Plaintiff's claims for failure to state a claim.  Defendant's Motion to Dismiss on

---

[7]     The Parties do not argue that O.C.G.A. § 11-2-316 applies in this case.

14

the grounds that the Kernions waived their right to subrogation, that the Contract exempts Defendant from liability, or limits the damages recoverable, is denied.

        2.    <u>Whether Plaintiff's Complaint, as plead, states a claim for relief</u>

Defendant next argues that Plaintiff fails to state a claim for breach of contract because Plaintiff does not identify what Contract provision Defendant allegedly breached.  The Complaint alleges that "the Kernions had contracted with the Defendant for the installation and maintenance of protective equipment, including (although not limited to) water sensors," and that "[d]ue to a failure in the installation and/or maintenance of that protective equipment, the water sensors never activated, and the Kernions (who were out of town at the time) were never notified of the water breach."  (Compl. ¶¶ 10-11).  Plaintiff asserts that "the cause of the above described damage was due to the failure of the Defendant to properly install and or maintain a sensor known as a waterbug."  (<u>Id.</u> ¶ 15).

To survive a motion to dismiss, a plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendant violated. <u>See</u> <u>Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.</u>, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) ("Because [plaintiff] cannot point to any contractual provision that [defendant] breached by failing to act in the manner set forth above, [plaintiff] cannot state a claim for breach of contract based on these allegations.")

15

(citing <u>Adkins v. Cagle Foods JV, LLC</u>, 411 F.3d 1320, 1327 (11th Cir. 2005)).

Here, Plaintiff does not identify what Contract provision was allegedly breached, and for this reason, Plaintiff's Complaint, as currently plead, fails to state a claim for breach of contract and is required to be dismissed.

Plaintiff asserts, for the first time in its Response, that Defendant breached Section 1 of the Contract, which states that Defendant "will install and make operational the Protective Equipment at the address listed in the Installation Work Order." (Resp. at 9). It is well-settled that a plaintiff may not amend its complaint by raising arguments for the first time in its response. <u>See</u> <u>Huls v. Liabona</u>, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curium) (argument not properly raised where plaintiff asserted it for the first time in response to defendant's motion to dismiss, instead of seeking leave to file an amended complaint). Because Plaintiff likely is able to state a plausible claim for breach of contract by alleging specifically a violation of Section 1 of the Contract, Plaintiff is permitted to file, within twenty-one (21) days of the date of this Order, an amended complaint which complies with the Federal Rules of Civil Procedure and the Court's Local Rules. [8, 9]

---

[8]     The Court notes that Plaintiffs' Complaint was filed in the State Court of Cobb County and removed to this Court. "The pleading standard in Georgia is lower than the standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under Georgia law, fair notice of the nature of the claim is all that is required, and the elements of most claims can be pled in general terms.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant ADT, LLC's Motion to

Dismiss [2] is **DENIED IN PART** and **GRANTED IN PART.**  It is **DENIED** on

Defendant's argument that Plaintiff's claims are barred by the Exculpatory

---

Pleading conclusions, rather than facts, may be sufficient to state a claim for relief." Ullah v. BAC Home Loans Serv. LP, 538 F. App'x 844, 846 (11th Cir. 2013) (comparing Georgia and federal pleading standards in evaluating fraudulent joinder); see also Fed. R. Civ. P. 81(c)(2) ("After removal, repleading is unnecessary unless the court orders it.").  If Plaintiff amends its Complaint to allege a violation of Section 1 of the Contract, that likely will be sufficient to allege a plausible claim for breach of contract.

[9]    Defendant also argued that Plaintiff cannot state a claim for negligence because Plaintiff fails to allege that Defendant breached a duty owed to the Kernions independent of the Contract.  It does not appear that Plaintiff intended to assert a negligence claim in its Complaint.  In its Response, Plaintiff appears to assert a gross negligence theory of liability in the alternative, presumably to avoid dismissal of its claim if the Court found that the Exculpatory Clauses bar Plaintiff's breach of contract claim.  See Holmes v. Clear Channel Outdoor, Inc., 644 S.E.2d 311 (Ga. Ct. App. 2007) (exculpatory clauses "are not void as against public policy unless they purport to relieve liability for acts of gross negligence or willful or wanton conduct").  If Plaintiff elects to file an amended complaint, the Court notes that Georgia law is clear that "[a] defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law." Fielbon Dev. Co. v. Colony Bank of Houston Cnty., 660 S.E.2d 801, 808 (Ga. Ct. App. 2008). Thus, "[a]bsent a legal duty beyond the contract, no action in tort may lie upon an alleged breach of [a] contractual duty." Id. (quoting Wallace v. State Farm Fire & Cas. Co., 539 S.E.2d 509, 512 (Ga. Ct. App. 2000)).

Clauses.  It is **GRANTED** on the ground that Plaintiff fails to allege a specific provision of the Contract it claims that Defendant violated.

**IT IS FURTHER ORDERED** that Plaintiff is permitted to file, within twenty-one (21) days of the date of this Order, an amended complaint which complies with the Federal Rules of Civil Procedure and the Court's Local Rules.

**SO ORDERED** this 30th day of September, 2015.

_____

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE